RECEIVED

AUG 14 2006

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| S.C. OF OKALOOSA, INC. | CIVIL ACTION NO. 06-1058 (LEAD) |
| | 06-1059 (MEMBER) |
| VERSUS | JUDGE DOHERTY |
| CREIG BRIGNAC, ET AL | MAGISTRATE JUDGE METHVIN |

## MEMORANDUM RULING

Pending before the Court are two Motions for Stay Pending Appeal [Doc. 6 Lead; Doc 6 Member] by Appellant, S.C. of Okaloosa, Inc. ("SCO").[1] The Motions request this Court grant a Stay pending the appeal by SCO of the Bankruptcy Court's Orders [BR Lead Doc. 1109; BR Member Doc. 796], which denied SCO's "Motion to Compel Compliance with the Terms of the Settlement Agreement and, Motion for Sanctions and Attorneys' Fees" and granted the "Motion to Confirm and Approve Performance Pursuant to Settlement Agreement" filed by Lucy Sikes, Elizabeth Andrus, D. Creig Brignac, Sue S. Brignac and Washington State Bancshares, Inc.[2] The

---

[1] SCO's Motions for Stay request relief from two cases pending in the United States Bankruptcy Court for the Western District of Louisiana. For reasons explained in the following section, there are two suits pending in the Bankruptcy Court that are, for present purposes, virtually identical. The Order appealed from and the Motions for Stay are identical in both cases. As such, SCO filed a Notice of Appeal from the Bankruptcy Court's Order in both cases pending before the Bankruptcy Court. The first appeal was assigned to this Court; the second appeal was assigned to Judge Haik. The two cases were consolidated on August 2, 2006 and are both currently pending before this Court. As the Motions and Order appealed from are identical, the Court will not differentiate between the two in this Ruling. Additionally, due to the fact that the pending Motions and Orders are identical, for ease of the reader, they are often referred to in the singular.

[2] The instant motion is opposed by D. Creig Brignac and Sue S. Brignac (collectively, "Brignac"), Washington State Bancshares, Inc. ("Bancshares"), Sunnyside Timber, L.L.C. ("Sunnyside Timber"), and Sunnyside Land, L.L.C. ("Sunnyside Land"). However, neither Sunnyside Timber nor Sunnyside Land are designated as appellees in the matter before this Court. Following a search on Pacer of the Bankruptcy Court docket sheets in the matters below, it appears that Lucy G. Sikes has been

Orders were issued by the Bankruptcy Court on May 26, 2006. For the following reasons, SCO's Motions for Stay Pending Appeal are DENIED.

I. **Background**

On June 20, 2000, involuntary petitions for relief were filed against Sunnyside Timber, L.L.C. and Sunnyside Land, L.L.C. (collectively, "Debtors"). The Debtors' sole tangible asset consisted of approximately 26,000 acres of real property, including substantial timber, in the State of Utah. At the time of the Debtors acquisition of the property, the timber estate was separated from the real property so that Sunnyside Land became the owner of the real property, while Sunnyside Timber acquired the timber growing thereon. The Debtors consented to the entry of an Order for Relief on August 17, 2000 under Chapter 11 of the Bankruptcy Code. On April 8, 2003, both cases were converted by the Bankruptcy Court from Chapter 11 cases to Chapter 7 cases. On the same date, the Bankruptcy Court appointed Ms. Lucy Sikes as the Chapter 7 Trustee of Sunnyside Timber, and Ms. Elizabeth Andrus as the Chapter 7 Trustee of Sunnyside Land (collectively, the "Trustees"). The Trustees subsequently filed a motion seeking approval of a compromise and settlement of claims, involving, primarily, sale of the Utah property.[3] Years of litigation ensued, much of which

---

appointed Trustee for Sunnyside Timber and Elizabeth G. Andrus has been appointed Trustee for Sunnyside Land in separate proceedings. John W. Lester, counsel for the Trustees, signed the Opposition (which is entitled a "Joint Opposition").

[3] Basically the settlement provided for the Trustees to conduct the sale of the Utah property pursuant to 11 U.S.C. §363, with SCO being obligated to offer credit bids of $6.3 million for the real property and $3.3 million for the timber. The settlement also provided that "Brignac or his assigns will loan the sum of $550,000 to the Trustees . . . to enable the Trustees to pay the sum of $325,000 to Regions as collateral assignee of SCO towards the payment of the remaining balance of the SCO/St. Landry Bank note." Following that, Regions and SCO would waive any claim under the lender's title policy, and all claims of SCO and Regions would be withdrawn. Further, upon the closing of the Trustees' sale and the funding of the loan to the Trustees, SCO and Regions would release the Brignac's stock in Bancshares, which had previously been pledged as security. [BR Lead Doc. 1107 and BR Member Doc. 794].

2

involved the respective rights and obligations of the Debtors' estates, creditors and parties in interest.

On June 1, 2004, the Trustees filed a Motion to Approve Compromise and Settlement. The motion was subsequently granted by the Bankruptcy Court on December 1, 2004. In its Reasons for Decision, the Bankruptcy Court found that the compromise and settlement was in the best interest of the estate, and the compromise and settlement met all requirements for approval of compromises under Fifth Circuit jurisprudence.

After the Bankruptcy Court approved the Settlement, the Trustees issued a Notice of Sale of the Debtors' land and timber to SCO or the highest bidder. SCO's credit bid of $9.6 million was the highest and best offer for the Utah Property and was accepted by the Trustees. On February 1, 2005, the Bankruptcy Court entered an Order Approving the Sale of Real Property and Standing Timber to SCO Free and Clear of all Liens, Claims, Interests, Mortgages and Encumbrances. The Trustees, thereafter, delivered a deed in escrow to Robert Reynolds, counsel for Regions, in order to advance the performances by the other parties to the Term Sheet.

Thereafter, on July 22, 2005, SCO sold the property to a third party for the sum of $13,000,000. According to the Trustees, Bancshares and Brignac (as well as the Court below), based upon the sales price of $13,000,000, the obligation to Regions (that being the $325,000 to be used "towards the payment of the remaining balance of the SCO/St. Landry Bank note") was satisfied. Thus, the Trustees, Bancshares and Brignac contend there is no obligation to pay the $325,000 to either Regions or SCO. SCO, however, argues that the Term Sheet clearly provides that the money is due regardless of the existence of an obligation to Regions. SCO further contends that the $325,000 was supposed to be paid to the holder of the St. Landry bank note in exchange for the

---

Member Doc. 794].

3

release of the Brignac's stock in Bancshares, which had been previously pledged as security.

On or about October 18, 2005, SCO filed a "Motion to Compel Compliance with the Terms of the Settlement Agreement, and for Sanctions and Attorneys' Fees." The Motion to Compel requested the Bankruptcy Court order the Brignacs and the Trustees to comply with the terms of the Settlement Agreement and turn over the $325,000 SCO alleges is due under the Settlement in exchange for the release of the Bancshares Stock. On November 8, 2005, a hearing was held on SCO's Motion to Compel and on the "Motion to Approve and Confirm Performance Pursuant to Settlement Agreement" filed by the Brignacs, Trustees and Washington State Bancshares.

On May 26, 2006, the Bankruptcy Court entered an Order denying SCO's Motion and granting the Motion to Approve and Confirm Performance. On June 15, 2006, SCO filed a Notice of Appeal appealing the Bankruptcy Court's Order. On the same day, SCO also filed a Motion for Stay Pending Appeal with the Bankruptcy Court requesting "that the Trustee remain in possession of and not be allowed to return the Bancshares Stock and/or the $325,000 included in the Settlement to Brignac and/or Bancshares and/or any individual as agent, heir or representative and/or claiming to act or acting for and on the Brignacs' and/or Bancshares' behalf and that the Trustee not be allowed to transfer, sell, or assign the Bancshares stock pledged and/or the $325,000 until a final determination is rendered regarding SCO's Appeal of the May 26, 2006 Order."[4] On June 16, 2006, the Bankruptcy Court entered an Order denying SCO's Motion for Stay Pending Appeal for the reason that insufficient cause had been stated. [BR Lead Doc. 1119; BR Member Doc. 806.] SCO

---

[4] This Court contacted counsel due to discrepant statements in pleadings regarding whether or not the Bancshares stock is currently being held by the Trustees, or has already been returned to the Brignacs. Counsel asserted to the Court that the stock was released to the Brignacs in October 2005. All parties agree the Trustees remain in possession of the $325,000. [Doc. 14.]

4

has repeated its request for a stay pending appeal with this Court. [Doc. 6.]

## II. Applicable Law

Bankruptcy Rule 8005 provides that a Motion for Stay pending Appeal must ordinarily be made to the Bankruptcy Court in the first instance, but if the motion is denied, the motion may be made to the Appellate Court, but the motion must show why the stay was not granted by the Bankruptcy Court. Here, appellant has satisfied the procedural rule and shown the Motion for Stay was first made to the Bankruptcy Court but was denied for insufficient cause. SCO has now brought the motion before this Court.

In determining whether to issue a stay pending appeal pursuant to Rule 8005, the Court is to consider four factors: (1) likelihood of success on the merits, (2) irreparable injury if the stay is not granted, (3) absence of substantial harm to the other parties from granting the stay, and (4) service to the public interest from granting the stay. Hunt v. Bankers Trust Company, 799 F.2d 1060, 1067 (5th Cir. 1986). While each part of the test must be met, the appellant need not always show a probability of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay. In Re: First South Savings Assoc., 820 F.2d 704 (5th Cir. 1987).[5]

---

[5] While movant need not always show likelihood of success on the merits, the Fifth Circuit has cautioned that "[l]ikelihood of success remains a prerequisite in the usual case even if it is not an invariable requirement. Only if the balance of equities (*i.e.*, consideration of the other three factors) is ... *heavily tilted* in the movant's favor will we issue a stay in its absence, and, even then, the issue must be one with patent substantial merit." First South at 709, FN 10 (quotations omitted) (emphasis in original). In this Court's view, the underlying dispute does not involve a "serious legal question" and, as such, SCO is required to demonstrate a likelihood of success on the merits, rather than merely a substantial case on the merits. *See e.g.* Wildmon v. Berwick Universal Pictures, 983 F.2d 21, 23-24 (5th Cir. 1992).

5

## III. Discussion

With respect to the first factor, likelihood of success on the merits, the Court finds that SCO has not demonstrated a likelihood that it will prevail on the merits of its Appeal. Following this Court's review of the record lodged with this Court, the Bankruptcy Court's Order from which SCO appeals appears to be well grounded both in law and fact. The Bankruptcy Court issued written reasons for its Order, which in this Court's preliminary examination, contained an accurate analysis of the contract between the parties and its interpretation under Louisiana law.

With regard to the second factor, SCO has not shown it will suffer irreparable harm if the Stay is not granted. SCO argues it "will suffer irreparable harm if the stock and $325,000 are released by the Trustee without SCO being delivered the consideration for which was bargained." [Doc. 6, p. 19]. As already stated at footnote 5, the stock was returned to the Brignacs almost ten months ago. Even were this Court to grant SCO's Motion for Stay Pending Appeal, that Stay would not undo what already has been done; therefore, the Court will not address SCO's argument that it will suffer irreparable harm if the Bancshares stock is released. With regard to the $325,000 being held by the Trustee, injunctive relief, such as a stay, generally is not appropriate to secure post-judgment legal relief in the form of money damages. By definition, "irreparable injury" is that for which compensatory damages are unsuitable. Wildmon at 24. The Court finds SCO will not suffer irreparable harm if the Stay is not granted, and injunctive relief is not appropriate in this case.

Regarding the third factor, whether granting a stay would substantially harm the other parties, SCO simply argues that "maintaining the status quo while the Appeal is pending will protect SCO's position, but will not harm the position of the Brignacs, Bancshares and Trustees." [Doc. 6, p. 19]. However, SCO fails to address the harm to numerous other parties who have been involved in this

bankruptcy litigation for over six years. As the Bankruptcy Court pointed out in its written reasons on the Motion to Approve Compromise and Settle Claims:

> The contentiousness of this case has cost the parties significant attorney fees, delay, and, in all likelihood, the opportunity to resolve the case through the Chapter 11 process. The history of the case indicates the significant complexity and likely duration of the case absent the settlement: any decision by the Court with respect to the various matters previously litigated would result in extensive appeal delays ... . This is the first time during the course of these cases that the majority of the creditors and interested parties have been in favor of a settlement, which resolves the majority of issues and will facilitate the long awaited conclusion of these cases. [BR Lead Doc. 936, p.12]

Granting a stay in this matter would delay this litigation and substantially harm the numerous other creditors involved in this matter, a factor which SCO has failed to address. Furthermore, according to appellees, were the stay to be granted, the Trustees would continue to accrue interest on the sums advanced by the Brignacs. Appellees argue the interest already accrued is in excess of the return on the Trustee's escrow, which has cost the estate tens of thousands of dollars.[6]

Finally, the Court looks to the fourth factor, whether the public has a significant interest in the prompt adjudication of these proceedings. Beyond the standard arguments that a successful appeal would benefit the bankruptcy system by clarifying unresolved issues of law, and that the public interest is served by "upholding the integrity of settlement agreements," SCO has failed to make any convincing argument that the public interest is served by granting a stay. Every appeal that attempts to "correct" an erroneous ruling or uphold the integrity of settlement agreements benefits the public interest in that the legal system is, by that correction, improved. However, SCO presents no real benefit to the public interests served by a stay, beyond general "hornbook" propositions.

---

[6] Appellants have not contested this argument of Appellees.

## IV. Conclusion

After a review of the pertinent law and the memoranda filed by the parties, the Court concludes that granting a stay of the Bankruptcy Court's Order would be inappropriate. Accordingly, the Motion for Stay Pending Appeal is DENIED.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this 14 day of August, 2006.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE