RECEIVED

JUN 2 7 2007

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| S.C. OF OKALOOSA, INC. | CIVIL ACTION NO. 06-1058 (LEAD) |
| | 06-1059 (MEMBER) |
| VERSUS | JUDGE DOHERTY |
| CREIG BRIGNAC, ET AL | MAGISTRATE JUDGE METHVIN |

**MEMORANDUM OPINION AND ORDER**

Appellant S.C. of Okaloosa, Inc. ("SCO"), brings this appeal, pursuant to 28 U.S.C. § 158(a), from two Orders of the Bankruptcy Court entered May 26, 2006 in the matters entitled *In re: Sunnyside Timber, LLC,* Case No. 00-51233, and *In re: Sunnyside Land, LLC,* Case No. 00-51234.[1] [2][3] [BR Doc. 1109 and 796, respectively]. SCO appeals the portions of the Order which: (1) granted

---

[1] Although not stated by the parties, it appears SCO is a secured creditor. [See Doc. 30, pp. 3-4]

[2] Also pending before the Court is SCO's Motion to Strike Appellee's Second Supplemental Reply Brief [Doc. 36]; a Motion for Leave (with opposition) to Supplement the Record (filed by D. Creig Brignac, Sue S. Brignac and Washington State Bancshares, Inc.) [Doc. 40]; a Motion to Strike the Motion for Leave (filed by SCO) [Doc. 43]; and a Motion for Leave to File a "Reply Memorandum of S.C. of Okaloosa, Inc., In Response to Appellees' Opposition to Appellant's Motion to Strike Appellees' Motion for Leave to Supplement the Record." [Doc. 48]. SCO's Motion to Strike [Doc. 36] argues appellee violated the Court's page limitation (set in a Minute Entry) and assumes facts not in evidence. The Court notes as to SCO's first argument, appellees were not in bad faith in exceeding the Court's page limit by merely a few pages, particularly as appellees used much larger font than appellant. As to SCO's second argument, the Court notes appellees agree the out of court statement should be stricken and have submitted a revised memorandum which omits the objectionable material. [Doc. 39] As such, appellant's Motion to Strike is DENIED, and appellees' original, second supplemental reply brief Doc. 34-1] is STRICKEN and SUBSTITUTED with the revised memorandum. Appellee's Motion for Leave to Supplement the Record [Doc. 40] and SCO's Motion for Leave to Reply to Appellee's Opposition [Doc. 48] will be addressed, *supra*.

[3] For reasons explained in the following section, there are two suits pending in the Bankruptcy Court that are, for present purposes, virtually identical. SCO appeals from the Bankruptcy Court's Orders in both cases. The first appeal was assigned to this Court; the second appeal was assigned to Judge Haik. The two cases were consolidated on August 2, 2006, and the appeals, as consolidated, are now pending before this Court. As the Motions and Orders appealed from are identical, the Court will not differentiate between the two in this Ruling. Additionally, due to the fact the pending Motions and Orders are identical, for ease of the reader, they are often referred to in the singular.

the "Motion to Confirm and Approve Performance Pursuant to Settlement Agreement" filed by Trustee Lucy Sikes, Trustee Elizabeth Andrus (collectively, "The Trustees"), Creig and Sue Brignac (collectively, the "Brignacs") and Washington State Bancshares, Inc. ("Bancshares"), and (2) denied the "Motion to Compel Compliance with the Terms of the Settlement Agreement, and Motion for Sanctions and Attorneys' Fees," filed by SCO.

## Factual and Procedural Background

On June 20, 2000, involuntary petitions for relief were filed against Sunnyside Timber, LLC ("Sunnyside Timber") and Sunnyside Land, LLC ("Sunnyside Land") (collectively, "the Debtors"). The Debtors' sole tangible asset consisted of approximately 26,000 acres of real property, including substantial timber, in the State of Utah. At the time of the Debtors acquisition of the property, the timber estate was separated from the real property so that Sunnyside Land became the owner of the real property, while Sunnyside Timber acquired the timber growing thereon. The Debtors consented to the entry of an Order for Relief on August 17, 2000 under Chapter 11 of the Bankruptcy Code. Years of litigation ensued, much of which involved the respective rights and obligations of the Debtors' estates, creditors and parties in interest. On April 8, 2003, both cases were converted by the Bankruptcy Court from Chapter 11 cases to Chapter 7 cases. On the same date, the Bankruptcy Court appointed Ms. Lucy Sikes as the Chapter 7 Trustee of Sunnyside Timber, and Ms. Elizabeth Andrus as the Chapter 7 Trustee of Sunnyside Land.

Ultimately, several parties reached an agreement to compromise and settle their claims. Generally speaking, and as pertinent to this appeal, the settlement provided for the Trustees to conduct the sale of the Utah property pursuant to 11 U.S.C. §363, with SCO being obligated to offer credit bids of $6.3 million for the real property and $3.3 million for the timber. The settlement also reads:

"Brignac or his assigns will loan the sum of $550,000 to the Trustees . . . to enable the Trustees to pay the sum of $325,000 to Regions as collateral assignee of SCO towards the payment of the remaining balance of the SCO/St. Landry Bank note." Following performance of that obligation, Regions and SCO would waive any claim under the lender's title policy, and all claims of SCO and Regions would be withdrawn. Further, upon the closing of the Trustees' sale and the funding of the loan to the Trustees, SCO and Regions would release the Brignac's stock in Bancshares, which had previously been pledged as security.

On June 1, 2004, the Trustees filed a "Motion to Approve Compromise and Settle Claims" [BR Doc 878]. The motion was granted by the Bankruptcy Court on December 1, 2004. In its Reasons for Decision, the Bankruptcy Court found that the compromise and settlement was in the best interest of the estate, and the compromise and settlement met all requirements for approval of compromises under Fifth Circuit jurisprudence.

On January 11, 2005, more than one year after the Bankruptcy Court approved the Settlement, the Trustees issued a Notice of Sale of the Debtors' land and timber to SCO or the highest bidder. [BR Doc. 942] SCO's credit bid of $9.6 million was the highest and best offer for the Utah Property and was accepted by the Trustees. On February 1, 2005, the Bankruptcy Court entered an Order approving the sale of real property and standing timber to SCO free and clear of all liens, claims, interests, mortgages and encumbrances. On July 22, 2005, the Trustees conducted the § 363 sale of the Utah property to SCO. That same day SCO sold the property to a third party for the sum of $13 million. [Doc. 30, p. 7][4]

---

[4] Appellees argued to the court below the lengthy delay between approval of the settlement and the subsequent sale was because SCO "delayed its performance, particularly in execution of the various mortgages called for by the Settlement Agreement and the Trustees Escrow [thereby delaying the § 363 sale], until such time as it had obtained a resale for the Sunnyside property." [B.R. Doc. 1049, p. 2] They

3

On September 12, 2005, the Trustees, Bancshares and Brignacs filed a "Motion to Confirm and Approve Performance Pursuant to Settlement Agreement." [BR Doc. 1049] The Trustees, Bancshares and Brignacs urged the Court below to confirm the performance by the Trustees in connection with the § 363 sale as complete, because, as there was no remaining balance on the St. Landry Bank Note, "there is no basis for the payment by the Trustees to Regions." [BR Doc. 1050, p.6] Essentially, the Trustees argued because SCO sold the Sunnyside property for the sum of $13 million, based upon that sales price, the obligation to Regions was satisfied, and therefore the Trustees were no longer obligated to pay the $325,000 to either Regions or SCO.[5] Conversely, SCO argued paragraphs two and three of the Term Sheet require the Trustees to pay SCO $325,000 regardless of the existence of an outstanding debt owed to Regions, and despite the fact SCO profited from the third party sale. [BR Doc. 1062, pp. 4, 8] SCO further argued the $325,000 was supposed to be paid to the holder of the St. Landry bank note in exchange for the release of the Brignacs' stock in Bancshares (which had been previously pledged as security), the guarantees of the Brignacs, and the surrender of the SCO lender's title policy to the Trustees. [Id. at 10.]

On October 20, 2005, SCO filed a "Motion to Compel Compliance with the Terms of the Settlement Agreement, and for Sanctions and Attorneys' Fees." [BR Doc. 1065] The Motion requested the Bankruptcy Court order the Brignacs, Bancshares and the Trustees to comply with the terms of the Settlement Agreement and order "the Brignacs, Bancshares and the Trustees [to] make

---

further argued SCO's delay was intentional and deliberate "in order to guarantee the discharge of all its indebtedness." *Id.* at p.3. Appellees have repeated those arguments to this Court, although in less detail. [Doc. 32, p.6]

[5]Appellees additionally argued to the Court below (as well as this Court) because SCO "flipped" the Sunnyside properties at a profit and the Regions' debt was satisfied in full, no remaining balance was due Regions, and "allowing SCO to gain an additional $325,000 without any reciprocal consideration would effectuate an unfair windfall profit in addition to the nearly $800,000 it has already realized by 'flipping' the Sunnyside properties and paying off the related obligations." [Doc. 32, p. 6]

4

the $325,000 payment to SCO in accordance with the terms of the Settlement." [Id. at 4]

On November 8, 2005, a hearing was held on both the Trustees' and SCO's motions. On May 26, 2006, the Bankruptcy Court entered an Order denying SCO's Motion and granting the Trustee's, finding the Term Sheet clearly indicates:

> Regions and Regions alone, not its assigns, would receive the funds. ... The language of both paragraphs 2 and 3 clearly contemplate a balance due on the St. Landry Bank Note and clearly indicate that the purpose of the payment is to pay that balance. ... The Term Sheet clearly provides that the release of the stock was dependant on two things, namely the closing of the section 363 sale and the funding of the $550,000 loan. The final sentence of paragraph 3 states that "S.C.O. and Regions shall release" the stock upon the occurrence of those two events. There is no mention of the payment of the $325,000 as a condition to the release of the stock.
>
> The Court believes that the Term Sheet is clear and unambiguous and must be interpreted to provide that the Trustees are not required to pay the sum of $325,000 to either Regions or SCO as the remaining balance due on account of the St. Landry Bank note was zero.

On June 15, 2006, SCO filed a Notice of Appeal of the Bankruptcy Court's Order. The same day, SCO also filed a Motion for Stay Pending Appeal with the Bankruptcy Court, requesting "the Trustee remain in possession of and not be allowed to return the Bancshares Stock and/or the $325,000 included in the Settlement to Brignac and/or Bancshares and/or any individual as agent, heir or representative and/or claiming to act or acting for and on the Brignacs' and/or Bancshares' behalf and that the Trustee not be allowed to transfer, sell, or assign the Bancshares stock pledged and/or the $325,000 until a final determination is rendered regarding SCO's Appeal of the May 26, 2006 Order." [BR Doc. 1117, p.4] On June 16, 2006, the Bankruptcy Court entered an Order denying SCO's Motion for Stay Pending Appeal, finding insufficient cause for the stay. [BR Lead Doc. 1119] SCO repeated its request for a stay pending appeal with this Court [Doc. 6]; the request was denied on

August 14, 2006.[6] The Court now attempts to address the substantive merits of SCO's appeal.

## Law and Analysis

The parties have vigorously argued their respective positions and have provided the Court with detailed memoranda. At its core, the parties dispute centers primarily around paragraphs 2 and 3 of the Term Sheet (a.k.a. the Settlement). Paragraphs 2 and 3 specifically provide as follows:

> 2. Within ten (10) days after the Bankruptcy Court's approval of this settlement and the closing of the § 363 sale under the terms of this agreement, Mr. Brignac or his assigns will loan the sum of $550,000.00[1] to the Trustees for Sunnyside Land and Timber (or in amounts as prorated by the Trustees) to enable the Trustees to pay the sum of $325,000.00[1] to Regions as collateral assignee of S.C.O. toward the payment of the remaining balance of the S.C.O. / St. Landry Bank note, the surrender of the S.C.O. lenders' title policy to the Trustees, the withdrawal with prejudice by S.C.O. of any claims in the bankruptcy cases, existing administrative expenses and maintain a reserve to provide for a distribution to unsecured creditors. This $550,000.00[1] super priority loan shall be repaid with interest at a variable rate equal to Wall Street Prime plus one-half percent adjusted daily, together with all appropriate legal fees and costs from the net proceeds of the recovery against FATCO without further order of the court.
>
> 3. The Trustees shall, upon approval of this settlement, the closing of the § 363 sale as contemplated by this agreement and funding of the loan by Mr. Brignac, immediately pay to Regions as collateral assignee of S.C.O. the sum of $325,000.00[1] towards the payment of the remaining balance due Regions, as collateral assignee of S.C.O. as assignee of the St. Landry Bank / Sunnyside Timber notes where upon S.C.O. and Regions waive any claim under the lender's title policy and shall surrender the same to the Trustee and all claims of S.C.O. and Regions against Sunnyside Timber, LLC shall be withdrawn with prejudice. Upon the closing of the § 363 sale as contemplated by this agreement and funding of the $550,000.00[1] loan to the Trustees, S.C.O. and Regions shall release the Washington State Bancshares, Inc. Stock pledged as security.
>
> > [1] These amounts shall be reduced dollar for dollar by any credit bid by SCO in excess of 9.6 million dollars.

---

[6] While SCO's motion to stay was pending with this Court, this Court contacted counsel due to discrepant statements in the pleadings as to whether or not the Bancshares stock was still in the Trustees possession, or had been returned to the Brignacs. Counsel asserted to the Court the stock was released to the Brignacs in October 2005. [Doc. 14] All parties agree the Trustees remain in possession of the $325,000.

SCO argues to this Court (as it did to the court below), the Term Sheet should be interpreted to require s to pay $325,000 to SCO regardless of the balance on SCO's note to Regions. The Court considers the ultimate issue to be whether the Term Sheet obligates the Trustees "to deliver $325,000 to SCO," as SCO argues, or whether the Trustees' obligation under the Term Sheet was extinguished when SCO paid $325,000 to Regions, as argued by the Trustees et al.

"A bankruptcy courts's findings of fact are subject to the clearly erroneous standard of review and will be reversed only if, considering all evidence, [this Court] is left with the definite and firm conviction that a mistake has been made." Matter of Young, 995 F.2d 547, 548 (5th Cir. 1993). The Bankruptcy Court's conclusions of law are reviewed de novo. Id.

This Court's first concern is whether the various obligations under the Term Sheet were analyzed by the court below under the appropriate law. The only discussion of the law applicable to the Term Sheet[4] is found in the Bankruptcy Court's Ruling at page 7, wherein the Court states: "The interpretation and enforcement of the Term Sheet is a matter of basic state law." The decision then proceeds to examine the contract under Louisiana law. All parties have based their arguments and interpretations of the Term Sheet on Louisiana law. It gives this Court great pause that no choice of law analysis was conducted, particularly in light of the fact the Term Sheet addresses a sale, conducted pursuant to the Bankruptcy Code (federal law), of real property located in Utah. While the Fifth Circuit has rendered decisions waiving a choice of law issue when not argued to the Court below,[5]

---

[4] The Term Sheet would be considered a settlement pursuant to common law, or a transaction or compromise pursuant to the Louisiana Civil Code.

[5] See e.g. Employer's Ins. of Wausa v. Occidental Petroleum Corp., (parties are bound by the theory of law they argued in the district court absent manifest injury) 978 F. 2d 1422, 1430 (5th Cir. 1992).

7

other Fifth Circuit decisions have remanded cases for a choice of law determination.[6]

Under many circumstances, this Court would find it prudent to consider this issue waived and apply Louisiana law. However, in this matter, the Court finds to do so would be unwise and could potentially result in manifest injury. For the following reasons, the Court finds remand to be the proper remedy in this matter: First, there are numerous signatories to the Term Sheet who are not before this Court, (i.e. Regions Bank, Midwest Resources, LLC, Coral Resources, Inc., J. Morgan, Inc., Chadwick, Inc., and Marine Assets, Inc.). Certainly those parties, as signatories to the Term Sheet, have a vested interest in the determination of which law applies to the Term Sheet. Second, were the Term Sheet to involve a choice of law analysis between federal law and/or any state law other than Louisiana, the Court perhaps would take a different course of action and bind the parties to the law argued to the court below. However, as Louisiana is unique among the states in that it is governed by civil (rather than common) law, the result in this matter may be quite different should Louisiana law apply. Finally, a choice of law analysis is a mixed question of law and fact, which potentially will require testimonial evidence.[7]

---

[6] *See* e.g. In the Matter of Quinlivan, 434 F. 3d 314, 320 (5th Cir. 2005) (case remanded to bankruptcy court in part for determination of choice-of-law issue.)

[7] For example, Louisiana's general rule for determination of the choice of law applicable to conventional obligations is found in Book IV of the Civil Code ("Conflict of Laws"), Title VI ("Conventional Obligations",) at Article 3537. That article states:

> Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the

Due to the foregoing, as well as the fact this is an interlocutory rather than a final appeal, the Court finds it would be manifestly unjust to ignore the potential error in the application of Louisiana law to the Term Sheet by the Court below. As such, this matter is REMANDED to the Bankruptcy Court for a determination of the law applicable to the Term Sheet. Additionally, appellees have moved for leave to supplement the record before this Court with a letter from SCO to the Trustees, which appellees allege increased SCO's credit bid, thereby triggering "the unambiguous language of the Settlement Agreement reducing any payment to zero." [Docs. 40 and 41] SCO has moved to strike appellee's motion to supplement, because the letter was not before the Bankruptcy Court, and consequently, this Court should not consider it. As this matter must be remanded for a determination of the applicable law, the Court leaves to the Bankruptcy Court's discretion whether or not the letter should now be considered on remand.

## Conclusion

For the reasons stated herein the Court REMANDS this case to the Bankruptcy Court for a determination of the law applicable to the Term Sheet. In addition, on remand, the Bankruptcy Court may determine whether or not a letter submitted by appellees to the Appellate Court while this matter was on appeal should be CONSIDERED on remand. Pursuant to Rule 8016(a) of the Federal Rules of Bankruptcy Procedure, the Clerk of Court is DIRECTED to prepare, sign and inter judgment upon

---

orderly planning of transactions, of promoting multi-state commercial intercourse and of protecting one party from undue imposition by the other.

Much of the analysis required under Article 3537 could potentially require testimonial evidence.

9

receipt of and in accordance with this Memorandum Opinion and Order.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this ___ day of _____, 2007.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE